# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Carl J. Soranno, Esq. (CS2304)
Bobby Kasolas, Esq. (BK8850)
Brach Eichler L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
(973) 228-5700
Attorneys for Plaintiff Thomas Global Group L.L.C.

RECEIVED

AUG 1 3 2013

AT 8:30_____M
WILLIAM T. WALSH, CLERK

| | |
|---|---|
| **THOMAS GLOBAL GROUP L.L.C.**<br><br>Plaintiff,<br><br>vs.<br><br>**DONALD V. WATKINS, WATKINS PENCOR, LLC, PENCOR-ORANGE CORP. PENCOR-MASADA OXYNOL, LLC, MASADA OXYNOL US-I, LLC, VULCAN RESOURCES, LLC, CONTROLLED ENVIRONMENTAL SYSTEMS CORP., MASADA RESOURCE GROUP, LLC, MASADA OXYNOL, LLC, MASADA OXYNOL US-I, LLC, OXYNOL SOLUTIONS LIMITED, W2E RESOURCES, S.A.** and **MASADA RESOURCES, LLC**<br><br>Defendants. | CIVIL ACTION #  *13-4864 (SRC)*<br><br><br>**COMPLAINT** |

Plaintiff Thomas Global Group, LLC ("TGG") hereby states as follows by way of Complaint against the above referenced defendants.

## <u>JURISDICTION</u>

1.      This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 <u>U.S.C.</u> 1330, because the action is brought under the laws of the United States,

and in particular, the Securities Act of 1934 as amended ("the Securities Act") and the Federal

Declaratory Judgment Act codified at 28 U.S.C. 2201 et. seq.

2.     This Court also has diversity jurisdiction over the subject matter of this civil

action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and

the amount in controversy exceeds $75,000 since it involves $1,000,000 in damages.

## VENUE

3.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a),

(b) and (c) because plaintiff resides in Morris County within the District of New Jersey, plaintiff

consents to jurisdiction in the State of New Jersey, defendants conducted business directly in the

State of New Jersey by continuously and systematically soliciting TGG and its principal Bryan

Thomas to make the $1,000,000 investment in controversy, defendants continuously and

systematically solicited other citizens and residents of the State of New Jersey in the same

manner to make similar and/identical investments with defendants, defendants have purposefully

directed their activities at residents of New Jersey, this litigation results from the damages that

TGG suffered arising from those specific activities and solicitations in New Jersey and

defendants purposeful conduct towards TGG and its principal, defendants have sufficient

minimum contacts with the State of New Jersey and the facts giving rise to this controversy

and/or all or a substantial part of the events regarding defendants' wrongful conduct giving rise to

the action occurred within the District of New Jersey. Venue is also proper pursuant to 12 U.S.C.

2614 since defendants' wrongful conduct occurred in New Jersey.

## THE PARTIES

4.     TGG is a New York limited liability company having its principal place of

business located at P.O. Box 776, Morris Plains, New Jersey 07932.

5.      Defendant Donald V. Watkins ("Watkins") is an Alabama licensed attorney and an individual resident of the State of Alabama, having his principal place of business located at the office of defendant Masada Resource Group, LLC located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

6.      Defendant Masada Resources Group, LLC ("MRG") is an Alabama limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205. Upon information and belief, MRG is the parent company of various "Masada" business entities both in the domestic United States and internationally.

7.      Defendant Watkins Pencor, LLC ("Watkins Pencor") is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205. Upon information and belief, Watkins is the Managing Member and controlling membership interest owner of Watkins Pencor. Watkins-Pencor is also a Class A Member of MRG.

8.      Defendant Pencor-Orange Corp. ("Pencor-Orange") is a New York limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.  Upon information and belief, Watkins is the Managing Member and 100% membership interest owner of Pencor-Orange.  Also upon information and belief, Pencor-Orange is a Class A member of MRG.

9.      Masada OxyNol, LLC ("MO") is an Alabama limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.  Upon information and belief, MO is predominantly and/or entirely owned and/or controlled by Watkins-Pencor, and is a spin-off affiliate entity of MRG.

10.     Upon information and belief, defendant Pencor-Masada OxyNol, LLC ("PMO") is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

11.     Upon information and belief, defendant Masada OxyNol US-I, LLC is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

12.     Upon information and belief, defendant Vulcan Resources, LLC ("Vulcan") is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

13.     Upon information and belief, defendant Controlled Environmental Systems Corp. ("CESC") is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

14.     Upon information and belief, defendant Masada OxyNol US-I, LLC is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

15.     Upon information and belief, defendant OxyNol Solutions Ltd. ("OxyNol Solutions") is a Delaware limited liability company having its principal place of business located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

16.     Upon information and belief, defendant W2E Resources, S.A. ("W2E") is a non-U.S. based corporation having its principal place of business in the United States located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

17.     Upon information and belief, defendant Masada Resources, LLC ("Masada Resources") is a Delaware limited liability company having its principal place of business in the United States located at 2170 Highland Avenue South, Suite 100, Birmingham, Alabama 35205.

## THE FACTS

18.     In or about March 2009, TGG's principal and Managing Member, Bryan Thomas, was solicited in New Jersey by Watkins to invest $1,000,000 in Watkins Pencor.

19.     Watkins is a very prominent attorney, investor and businessman in Alabama who owns and controls Watkins Pencor and the other defendant entities.

20.     At the time Watkins approached Thomas, Thomas and TGG had little investment experience in the type of investment opportunity that Watkins was presented and soliciting.

21.     At the time Watkins approached Thomas, Thomas, his wife and TGG were not represented by an attorney.

22.     Watkins advised Thomas and Thomas' wife that Watkins-Pencor was involved in the waste to energy industry ("W2E") using defendants' "OxyNol" process, and provided Thomas with highly optimistic representations regarding the profit potential and low risk of the investment opportunity he was presenting, stating the investment would be very safe and very profitable.

23.     Additionally, Watkins represented that high-profile individuals such as former Secretary of State Condoleeza Rice had joined the Board of Directors of one of Watkins-Pencor's affiliates, and that Martin Luther King III was politically promoting Watkins' W2E business interests in the various defendant companies to President Obama.

24.     Specifically, Watkins made the following representations, among others, to Thomas that Watkins subsequently confirmed in writing following Thomas' making of the investment through TGG:

- Condoleeza Rice was joining defendant Masada Resource Group, LLC as a "senior global advisor" who would work under Watkins' "direct supervision";

- Martin Luther King III (who Watkins claimed had requested a Camp David meeting with President Obama to discuss "Masada's economic stimulus proposal."

25.     Based upon the representations made by Watkins, false promotional materials provided by Watkins and after repeated solicitations from Watkins, including Watkins personal visit to Morris County, New Jersey to meet with Thomas and his wife, as well as numerous phone calls to discuss the investment opportunity, Thomas ultimately made the $1,000,000 investment through his company TGG in reliance upon Watkins' representations.

26.     The $1,000,000 was wired by TGG directly to Watkins' law firm, Donald V. Watkins, P.C.

27.     At the time TGG and Thomas made the investment, neither Thomas, his wife nor TGG were represented by an attorney.

28.     On or about March 17, 2009, TGG and Watkins Pencor entered into a Purchase Agreement & Irrevocable Assignment of Economic Interests ("Purchase Agreement") whereby TGG contractually purchased from "Watkins Pencor" a "one percent (1%) of the total economic interests (i.e. cash distributions for the life of the waste-to-ethanol investment) to which Donald V. Watkins is entitled by virtue of his ownership of [defendant Pencor-Orange] and [Pencor-Orange's] membership interests in" the other defendant companies named as defendants in this Complaint.

29.     The Purchase Agreement does not contain an arbitration clause in the event of a dispute between TGG and defendants Watkins, Watkins Pencor and/or Pencor-Orange.

30.     Moreover, Watkins as an attorney never explained to TGG or Thomas why the investment was structured as an "assignment of economic interest" rather than a direct investment or ownership purchase in Watkins' companies and/or their affiliate companies.

31.     No term sheet or offering memorandum was ever provided to TGG or Thomas by Watkins either.   To this very day, TGG has never received an accounting of any kind for its $1,000,000 investment.

32.     For two years following the making of the $1,000,000 investment, TGG heard nothing of substance from Watkins or any representative of any of his defendant companies and/or their affiliates concerning the performance or status of TGG's investment.  During the subsequent two years, Thomas spoke with Watkins repeatedly on multiple occasions by telephone whereby Watkins verbally represented to Thomas that TGG's investment would be returned to TGG.

33.     Over four (4) years later following TGG's investment with Watkins and/or his companies, TGG has not received back one dollar of TGG's investment or any return on that investment.

34.     Additionally, TGG has not been provided with any information or detail of any kind concerning TGG's investment, the status of the investment, what TGG's investment was used for and/or where the $1,000,000 actually went.

35.     Moreover, no statements of any kind have been provided to TGG either concerning its investment.

36.     Consequently, TGG has made multiple phone calls and inquiries to Watkins to determine the status of TGG's investment.

37.     Rather, TGG continually received emails from Watkins alleging various economic and operational milestone achievements of "Masada," and the fact Watkins and his companies were repeatedly having alleged successful business meetings and understandings with world government leaders such as the Prince/King of Saudi Arabia and the Prime Minister of Jamaica regarding the entry of the various defendant W2E companies or alleged "Masada" companies into those countries.

38.     Consequently, TGG became alarmed about its investment and engaged counsel to obtain answers concerning TGG's investment.

39.     On or about May 15, 2013, TGG's New York counsel Robert Heim, Esq. of Meyers & Heim LLP wrote to Watkins demanding the return of TGG's $1,000,000 investment, and outlining the suspicious representations that Watkins had initially made to me.

40.     TGG's attorneys' investigation also revealed that Watkins and Watkins Pencor did not file any of the legally required flings with the Securities & Exchange Commission ("SEC") or any applicable state regulator regarding the subject investment, including a failure to file Form-D required by federal law and a failure to file state notice requirements with the State of Alabama.

41.     In response to the May 15, 2013 letter from TGG's counsel, Watkins individually, Watkins Pencor and Pencor-Orange filed a Demand for Arbitration and an Arbitration Complaint with the American Arbitration Association ("AAA") without any legal or contractual right to do so captioned Watkins Pencor, LLC, et. al. v. The Thomas Global Group L.L.C., AAA # 30 198 00439 13 seeking a declaratory judgment that: (i) TGG's economic participation interest in

Watkins Pencor and Pencor-Orange is exempt from the registration requirements of the federal and state securities laws and regulations; (ii) that TGG is bound by the Operating Agreements of defendant MRG; (iii) that Watkins Pencor and Pencor-Orange have no legal obligation or duty to refund TGG's investment; (iv) attorneys' fees and court costs; and (v) other unidentified relief.

42.     On June 27, 2013, TGG's counsel wrote to the AAA advising the AAA that the matter was not eligible for arbitration since TGG never contractually agreed to arbitrate any dispute with the defendants.

43.     Defendants and AAA have no right to compel TGG to arbitrate its dispute with Watkins, Watkins-Pencor or Pencor-Orange because: (i) there was no arbitration clause in the Purchase Agreement; (ii) the alleged arbitration clause Watkins and his companies relied upon in demanding and filing for arbitration was contained in an alleged (yet unproduced) Operating Agreement for MRG, and which by its own alleged terms as set forth in the Arbitration Complaint only applied to disputes among members of MRG – of which TGG is not a member; (iii) the terms of the purported arbitration clause  makes no mention of assignees of a member's economic interest being subject to arbitration of any dispute;  (iv) TGG was not an assignee of MRG, but rather Watkins individually by way of the Purchase Agreement; and (v) the Purchase Agreement merely assigned TGG the right to receive a portion of payments or cash distributions allegedly due to Watkins from his various ownership interests in the various defendant companies, and did not assign any membership interest or ownership interest of any kind to TGG.

44.     The actual Operating Agreement for MRG has never produced by Watkins, and was never appended to his Arbitration Demand or Arbitration Complaint.

45.    Neither Thomas nor TGG have ever personally seen the MRG Operating Agreement, and therefore could never have agreed to any of its alleged terms regarding arbitration.

46.    Specifically, Page 2 of Watkins' and his companies' Arbitration Complaint in Paragraph 5 cites the alleged Section 18.6 of the MRG Operating Agreement that only applies to disputes between the Members of MRG (which TGG is not) or between Members of MRG and that specific company, and that reads as follows:

> "Other than actions for specific performance or injunctive relief, **the Members and the Company** agree that any and all claims, disputes or other matters in question among or between Class A Members, Class B Members, the Company or any combination thereof and arising out of, based upon or relating to this Agreement or any breach hereof, any covenant, agreement, representation or warranty contained in this Agreement, or any relationship or duty among or between the parties arising from this Agreement shall be subject to and decided by binding arbitration…" (emphasis added).

47.    TGG is also not an assignee of any membership interest ownership in MRG or any other defendant company, and therefore is still not subject to the above arbitration provision.

48.    On July 9, 2013, the AAA responded to TGG counsel's letter contending that defendants had met the filing requirements to arbitrate, and that the AAA Arbitration would proceed absent an Order from a court.

49.    Since TGG never contractually agreed in the Purchase Agreement to arbitrate any dispute that may arise between TGG and Watkins or any of his defendant companies, and since TGG is not a Member of MRG or an assignee of MRG, TGG cannot be compelled to arbitrate any legal dispute he may have between Watkins, Watkins-Pencor or Pencore-Orange concerning a dispute over the Purchase Agreement.

## COUNT I
### (Breach of Contract)

50.    TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

51.    Watkins, Watkins Pencor and Pencor-Orange are in material breach of the Purchase Agreement between those parties by defendants failing and/or refusing to pay TGG one percent (1%) of the total economic interest that those defendants have in the other defendants business entities and/or that those defendants have received as result of ownership or management interests in those other defendants business entities.

52.    While Watkins, Watkins Pencor and Pencor-Orange have received economic distributions and/or payments from their business operations and/or the business operations of the other defendant business entities they are affiliated with and referenced in the Purchase Agreement, Watkins, Watkins Pencor and/or Pencor-Orange have failed and/or refused to pay TGG one percent (1%) of those cash distributions and economic interests they have received.

53.    As a result, TGG has been and will continue to be damaged.

## COUNT II
### (Breach of the Implied Covenants of Good Faith & Fair Dealing)

54.    TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

55.    Watkins, Watkins Pencor's and Pencor-Orange's conduct in refusing to pay TTG one percent (1%) of the economic interests and cash distributions enjoyed by Watkins and those two companies derived from the other defendant business entities constitutes a material breach of the implied covenants of good faith and fair dealing found in each and every contract made under the laws of the State of New Jersey.

56.     The Purchase Agreement was solicited and marketed in New Jersey, and was consummated in New Jersey by the execution of the Purchase Agreement by TGG in New Jersey.

57.     Defendants have acted in bad faith towards TGG and in an unfair fashion by failing and/or refusing to pay TGG the one percent (1%) of the economic interest he is entitled to under the Purchase Agreement, and that Watkins, Watkins Pencor and Pencor-Orange have received from the defendants entities.

58.     As a result, TGG has been and will continue to be damaged.

### COUNT III
### (Conversion)

59.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

60.     Defendants have taken control of TGG's $1,000,000 and have exercised unwarranted dominion and control over that investment by failing and/or refusing to invest those monies into the various "Masada Entities" and defendant business entities referenced in the Purchase Agreement comprising those alleged "Masada Entities."

61.     Defendants have not used TGG's $1,000,000 investment towards advancing the business operations of any of the defendant business entities, but rather have diverted those monies elsewhere for improper and unauthorized use.

62.     Defendants' unauthorized assumption and exercise of the rights of ownership over monies belonging to TGG, and not using such investment funds for their intended investment purpose, constitutes conversion.

63.     As a result, TGG has been and will continue to be damaged.

## COUNT IV
### (Breach of Fiduciary Duty of Care)

64.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

65.     As a result of the Purchase Agreement, the investment by TGG and the representations made by Watkins, Watkins Pencor and Pencor-Orange, Watkins and his defendant business entities owed a fiduciary duty of care to TGG to properly manage and protect TGG's investment in any of the defendant business entities.

66.     Defendants though, and in particular Watkins, acted recklessly and in a grossly negligent manner towards TGG's investment.

67.     Since TGG is an entity entitled to a portion of Watkins', Watkins-Pencor's and Pencor-Orange's cash distributions from their business operations and/or the business operations of the other defendant companies, Watkins, Watkins Pencor and Pencor-Orange had a fiduciary duty of care to TGG relating to all business related activities of those companies and the affiliate defendant companies.

68.     Since TGG is an entity entitled to a portion of Watkins', Watkins Pencor's and Pencor-Orange's cash distributions from their business operations and/or the business operations of the other defendant companies, Watkins, Watkins Pencor and Pencor-Orange owed a fiduciary duty of care to TGG to protect and manage TGG's investment in a reasonable, prudent, informed, knowledgeable, honest and diligent manner when invested in the various defendants companies.

69.     By maintaining knowingly false and inaccurate accounting and financial records for the defendant business entities, by making intentional misrepresentations to TGG and its principal concerning the risk and profitability of the $1,000,000 investment in the defendant

companies, by inappropriately utilizing TGG's $1,000,000 investment to pay for undisclosed debts and expenses having nothing to do with the investment proposal solicited by Watkins and by misrepresenting the financial condition, accounting, project backlog and business operations of the various defendant entities, Watkins, Watkins Pencor and Pencor-Orange have breached their fiduciary duties of care to TGG.

70.     Watkins' and his defendant companies' conduct constitutes gross negligence, reckless conduct, intentional misconduct, unreasonable and uninformed business judgment, and a knowing violation of law.

71.     As a result, TGG has been and will continue to be damaged.

## COUNT V
### (Breach of Fiduciary Duty of Loyalty)

72.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

73.     As a result of the Purchase Agreement, the investment by TGG and the representations made by Watkins, Watkins Pencor and Pencor-Orange, Watkins and his defendant business entities owed a fiduciary duty of loyalty to TGG to properly manage and protect TGG's investment in any of the defendant business entities, and to handle and manage TGG's investment in a way that was loyal and advantageous to TGG.

74.     By failing and/or refusing to disclose to TGG and its principals the negligent, false, fraudulent and deceptive accounting and financial records for the various defendant business entities, and by intentionally showing TGG and its principal knowingly false and inaccurate financial books, records, business and investment proposals and outlooks, and statements supporting the idea of low risk and high profitability, Watkins, Watkins Pencor and Pencor-Orange breached their fiduciary duty of loyalty to TGG to its detriment.

75.     By failing to advise TGG of the negligent, deceptive, false, fraudulent and inaccurate financial books and records, as well as the undisclosed and wrongfully deferred debts and expenses of the various defendant business entities that TGG's investment was ultimately used to pay for, Watkins, Watkins Pencor and Pencor-Orange breached their fiduciary duty of loyalty to TGG to its detriment.

76.     Defendants diverted TGG's $1,000,000 investment to locations or companies involved in the business operations of Watkins or his various defendant business entities.

77.     By diverting TGG's investment to "non-Masada companies" and/or for "non-Masada" businesses, Watkins, Watkins Pencor and Pencor-Orange have breached their fiduciary duty of loyalty to TGG.

78.     As a result, TGG has been and will continue to be damaged.

## COUNT VI
### (Fraud in the Inducement, Legal Fraud and Equitable Fraud)

79.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

80.     Watkins, Watkins Pencor and Pencor-Orange made material and intentional misrepresentations to TGG and its principal in order to compel TGG and its principal to rely upon those material misrepresentations, and to induce them to make the $1,000,000 investment that Watkins and his companies solicited.

81.     TGG and its principals reasonably relied upon those material misrepresentations and misrepresentative materials, and were fraudulent induced as a result to make the $1,000,000 investment and execute the Purchase Agreement.

82.     Specifically, Watkins, Watkins Pencor and Pencor-Orange made material and intentional misrepresentations to TGG concerning the alleged involvement of former Secretary

of State Condoleeze Rice as a member of MRG's Board of Directors and/or employee of MRG, the alleged involvement of Martin Luther King, Jr. III and his alleged interactions with President Obama regarding the defendant business entities' operations and prospects regarding profitability and future profits.

83.     Additionally, Watkins, Watkins Pencor and Pencor-Orange provided materially false and misleading information and materials to TGG and its principals in hopes of TGG and its principals relying upon those misleading materials to invest with Watkins and his defendant companies.

84.     TGG and its principals reasonably relied upon those materially misleading materials and misrepresentative materials, and were fraudulent induced as a result to make the $1,000,000 investment and executed the Purchase Agreement.

85.     As a result, TGG has been and will continue to be damaged.

## COUNT VII
### (Common Law and Statutory Accounting)

86.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

87.     As a result of TGG's contractual right to one-percent (1%) of the "economic interest" and cash distributions due Watkins, Watkins Pencor and Pencor-Orange from either those companies' business operations or the business operations of the other defendant entities, TGG is entitled to a common law accounting and statutory accounting from defendants pursuant to N.J.S.A. 14A:5-28 et. seq.

88.     TGG has made repeated demands to Watkins over the last approximately four (4) years for an accounting of TGG's $1,000,000 investment, but to date has received absolutely no accounting from Watkins or any of the defendant business entities or their agents/representatives.

89.     To date, despite repeated demands, TGG has not even received any information as to what its $1,000,000 was used for and/or what the financial condition or status is of the business entities that received his capital investment.

90.     As a result, TGG has been and will continue to be damaged.

## COUNT VIII
### (Unjust Enrichment)

91.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

92.     Watkins, Watkins Pencor's and Pencor-Orange's use of TGG's $1,000,000 investment for purposes other than "Masada" business purposes and/or improper use of those funds for undisclosed purposes other than investment in the companies referenced in the Purchase Agreement constitutes unjust enrichment of defendants at the detrimental expense of TGG.

93.     As a result, TGG has been and will continue to be damaged.

## COUNT IX
### (Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5)

94.     TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

95.     Watkins and his companies made material misrepresentations to TGG and its principal that the proposed investment opportunity advocated by Watkins had a high likelihood of being extremely profitable with low risk.

96.     Watkins intentionally omitted to tell TGG and its principal Thomas that TGG would not receive any annual or periodic financial statements, that there would be no substantive updates regarding the results of business operations of the named defendants companies, that no

disclosures concerning how TGG's and Thomas' investment would be used or invested and/or how TGG's $1,000,000 has actually been used.

97.     During the relevant time period, Watkins, Watkins Pencor and Pencore-Orange made the false and misleading statements above while failing to disclose material facts to TGG and its principal necessary in order to make the statements made, in light of the circumstances under which they were made.

98.     Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in that they:

> (a) employed devices, schemes and artifices to defraud TGG and its principal;
>
> (b) made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or
>
> (c) engaged in acts practices and a course of business that operated as a fraud or deceit upon plaintiff in connection with the securities of Watkins-Pencor, Pencor-Orange and/or the other defendant business entities set forth in the Purchase Agreement.

99.     Defendants further failed and/or refused to file Form-D with the Securities & Exchange Commission ("SEC") regarding the subject securities offered and sold to TGG, and failed and/or refused to file the statutorily required notice with the State of Alabama concerning the securities defendants offered and sold to TGG.

100.    TGG has suffered damages in that, in reliance on the false statements and failures to disclose by defendants, TGG purchased securities from Watkins, Watkins Pencor and/or Pencor-Orange.

101.    TGG would not have purchased Watkins Pencor and/or Pencor-Orange securities if TGG and its principals had been aware that there was substantial risk involved in the investment, little chance of making a profit and/or that TGG would not receive financial

statements or other suitable updates from defendants and Watkins regarding the status of the investment and results from the operation of defendants' business operations.

102.    As a result, TGG has been and will continue to be damaged.

## COUNT X
### (Alter-Ego Fraud by Defendants)

103.    TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

104.    Watkins and all of the defendants business entities are one and the same entity, and the defendant business entities are merely alter-egos of Watkins himself.

105.    Defendants co-mingle their funds amongst one another and do not respect the corporate structure of each and every defendant limited liability company and/or corporation.

106.    Defendants have intermingled and dispersed TGG's investment among themselves in order to convert TGG's $1,000,000 investment and/or so ensure that the investment cannot be traced or accounted for.

107.    Watkins has used the various defendant business entities to perpetrate a fraud upon TGG by representing that TGG's investment would be used to advance the business interest and profitability of the various defendant business entities referenced in the Purchase Agreement, which in turn would allegedly benefit TGG by receiving one percent (1%) of Watkins' cash distributions from the defendant business entities referenced in the Purchase Agreement.

108.    As a result, TGG has been and will continue to be damaged.

## COUNT XI
### (Constructive Trust)

109.   TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

110.   Based upon defendants' fraudulent and wrongful conduct in attempting to fraudulently place TGG's investment beyond the reach of TGG, and based upon the refusal of defendants to account to TGG for the whereabouts, status and/or use of the investment, and given the alter-ego and intermingling of funds amongst all of the defendant entities,  and given Watkins is one and the same with all of the defendant entities, a constructive trust should be imposed up all assets of Watkins and the defendant entities, and a minimum of $1,000,000 should be held in trust and/or turned over to TGG to satisfy the outstanding amount Watkins and the defendant entities owe to TGG.

## COUNT XII
### (Declaratory Judgment)

111.   TGG repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

112.   Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 et. seq., TGG seeks a declaratory judgment that there is no arbitration provision in the Purchase Agreement entitling Watkins, Watkins Pencor and Pencor-Orange to request, prosecute, file for and/or compel arbitration of any dispute between those defendants and TGG.

113.   Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 et. seq., TGG seeks a declaratory judgment that there is no arbitration provision in the Purchase Agreement entitling any of the named defendants in this action to request, prosecute, file for and/or compel arbitration of any dispute between those defendants and TGG.

114.   Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 et. seq., TGG seeks a declaratory judgment ruling that TGG never entered into any contractual agreement with Watkins, Watkins Pencor, Pencor-Orange, MRG and/or any other named defendant or affiliate company of any named defendants to arbitrate any dispute between TGG and any of those parties and non-parties.

115.   Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 et. seq., TGG seeks a declaratory judgment ruling that AAA Arbitration currently pending between TGG and defendants Watkins, Watkins Pencor and Pencor-Orange is not authorized by any contractual agreement of any kind, and that the AAA Arbitration is improper, void and therefore Ordered terminated, permanently enjoined, withdrawn and/or dismissed with prejudice by this Court.

**WHEREFORE**, plaintiff Thomas Global Group L.L.C. hereby demands judgment as follows against all defendants named in this matter:

(a)   temporary restraints, preliminary injunctive and permanent injunctive relief against defendants and the AAA enjoining them from further proceeding, administrating and/or prosecuting the AAA Arbitration and Arbitration Complaint against TGG;

(b)   a declaratory judgment that defendants have no legal or contractual right to compel TGG to arbitrate the dispute between TGG and any defendants concerning TGG's $1,000,000 investment with Watkins and/or his defendant companies;

(c)   consequential, contractual and/or actual damages in TGG's favor and against defendants;

(d)   punitive damages in TGG's favor and against defendants;

(e)   imposition of a constructive trust for at least $1,000,000 to be imposed upon all defendants;

(f)      a common law and statutory accounting from defendants regarding all aspects of TGG's $1,000,000 investment, including but not limited to financial statements, profit and loss statements, tax returns, bank records and/or documentary evidence of where TGG's investment was deposited and used;

(g)      attorneys' fees and costs of suit;

(h)      pre-judgment and post judgment interest; and

(i)      any other relief the Court deems equitable and proper.

**BRACH EICHLER L.L.C.**
Attorneys for Plaintiff

By:   */s/ Carl J. Soranno*
        CARL J. SORANNO, ESQ.

DATED: August 9, 2013

## CERTIFICATION PURSUANT TO LOCAL CIV. R. 11.2

The within matter in controversy is not related to any other pending litigation in state or federal court, but is partially related to an improper pending arbitration before the American Arbitration Association captioned <u>Watkins Pencor, LLC, et. al. v. The Thomas Global Group L.L.C.</u>, AAA # 30 198 00439 13. I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

**BRACH EICHLER L.L.C.**
Attorneys for Plaintiff

By:   */s/ Carl J. Soranno*
        CARL J. SORANNO, ESQ.

DATED: August 12, 2013