NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| THOMAS GLOBAL GROUP L.L.C., Plaintiff, v. DONALD V. WATKINS et al., Defendants. | : | **Civil Action No. 13-4864 (SRC)(CLW)** **OPINION AND ORDER** |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for reconsideration of this Court's Opinion and Order entered February 22, 2016 ("the Opinion," Docket Entry 90), filed by Plaintiff Thomas Global Group L.L.C. ("Plaintiff") [Docket Entry 93]. For the reasons discussed below, the Court will deny the motion for reconsideration.

"A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *See Banda v. Burlington Cnty.*, 263 F. Appx. 182, 183 (3d Cir. 2008) (citing *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999)); L. Civ. R. 7.1(i). Thus, "[t]he only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, might

reasonably have altered the result reached." *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).

Plaintiff seeks reconsideration of the Court's dismissal of former Defendant Donald V. Watkins P.C. ("the P.C.") from this action, based on the Court's finding that it lacked *in personam* jurisdiction over the P.C. Specifically, the Court found that "Plaintiff, however, offers no evidence supporting the conclusion that this Court could exercise general or specific jurisdiction over the P.C. itself, given that the P.C. has no offices or bank accounts in New Jersey, is not licensed in New Jersey, has never done business in New Jersey, has never been admitted to practice in any court in New Jersey, and has never handled a case or representation in New Jersey." *Thomas Global Grp. L.L.C. v. Watkins*, No. 13-4864, 2016 WL 706194, at *3 (D.N.J. Feb. 22, 2016). Furthermore, the Court found that Plaintiff had not adequately pled an alter ego theory of liability for jurisdiction over the P.C., based on the Court's alleged jurisdiction over Donald V. Watkins ("Watkins"). *Id.* at *4. Plaintiff had the burden to establish a prima facie case of *in personam* jurisdiction over the P.C., and since Defendants challenged personal jurisdiction, Plaintiff was required to "respond with actual proofs, not mere allegations," such as sworn affidavits or other competent evidence. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Plaintiff does not object in its briefing to this Court's jurisdictional findings about the Court's direct jurisdiction over the P.C. Instead, Plaintiff moves for reconsideration of the Court's determination that Plaintiff did not not adequately oppose Defendants' motion to dismiss the P.C, with respect to Plaintiff's alter ego theory of jurisdiction over the P.C., with affidavits or

other competent evidence. Plaintiff correctly notes that it cited in its Opposition to sworn affidavits, submitted as evidence with other motions in this case, to support its alter ego theory of liability [Docket Entry 93].

The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law. Fed. R. Civ. P. 4(k)(1). Consistent with the Due Process Clause, a court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with the forum, such as not to "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

An alter ego theory of liability applies when one entity so dominates another that, together, the entities act as a single and cohesive economic unit. *State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500-01 (1983). "[W]here appropriate, courts of New Jersey have looked beyond the corporate form to the functional reality behind it" to determine whether personal jurisdiction exists over a defendant. *Star Video Entm't, L.P. v. Video USA Assocs. 1 L.P.*, 253 N.J. Super. 216, 223 (N.J. Super. Ct. App. Div. 1992). Therefore, "[i]f the disputed facts are resolved sufficiently to provide a basis for holding liable the individual defendants under alter ego theory, their presence for jurisdictional purposes cannot be said to be either unfair or unreasonable." *Id.* at 223-24. New Jersey law requires that, to pierce the corporate veil, both of the following elements must be shown: (1) "the parent [corporation] so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Ventron*, 94 N.J. at 501. "[C]omplete

domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own" must be shown. *Craig v. Lake Asbestos of Quebec Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (citation omitted). Once this showing has been made, the court may examine the fraud or injustice issue. *Ventron*, 94 N.J. at 501. Courts have considered various factors to determine if the corporate veil should be pierced, including:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Am. Bell Inc. v. Fed'n of Tel. Workers*, 736 F.2d 879, 886 (3d Cir. 1984) (quotations omitted).

Generally, an alter ego theory of personal jurisdiction "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Plaintiff asserts a theory in which the subsidiary corporation (the P.C.) would be subject to this Court's jurisdiction because the controlling parent (Watkins as an individual) is allegedly subject to personal jurisdiction in New Jersey; in effect, Plaintiff asserts a reverse alter ego theory of jurisdiction. Plaintiff has not cited to a case applying New Jersey law where a court found jurisdiction over a subsidiary based on its jurisdiction over a parent who is an individual. Furthermore, this Court has not identified such a case in its research. *See, e.g.*, *Repetti v. Vitale*, 2011 WL 3962518, at *5 (N.J. Super. Ct. App. Div. Sept. 9, 2011) ("We have located no case employing [the reverse piercing of a corporate veil] remedy in New Jersey"). On

this issue of whether a controlling parent's contacts with a forum may be imputed to subsidiaries under an alter ego theory, the Tenth Circuit has explained:

> When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former. . . . In such situations, attribution of contacts to the [controlling] individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual. The same situation obtains in those cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary.
>
> But the rationale of these cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation. The dominated corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego. . . . [The alter ego defendants] have, as much as any other defendant, a constitutionally protected liberty interest in not being subject to the binding judgments of a forum with which [they have] established no meaningful contacts, ties, or relations.

*Home-Stake Prod. v. Talon Petroleum*, 907 F.2d 1012, 1020-21 (10th Cir. 1990) (internal quotation marks and citations omitted). The Tenth Circuit's reasoning is sound, and therefore this Court rejects Plaintiff's theory of alter ego jurisdiction in this case.

Even if a reverse alter ego theory of jurisdiction was available in this case, Plaintiff's certifications do not adequately support it. The certifications Plaintiff offers from Bryan and Danielle Thomas [Docket Entries 5-1, 11-3], as well as the first Kasolas certification [Docket Entry 11-1] do not directly address the P.C.; at the time those certifications were signed, the P.C. was not a Defendant in this action. Related to the issue of jurisdiction, Plaintiff asserts that the second Kasolas certification alleges that: all Defendants are under the control or ownership of Watkins, and that all Defendants share the same principal place of business; Watkins does not respect the corporate structure of the Defendant LLCs and corporations, because he comingles

funds from investors and economic participants by only using the P.C.'s bank account for all money coming into or going out of Defendant entities; Watkins does not file tax returns for some Defendant corporations; none of the Defendant companies have employees beyond Watkins, revenues, a board of directors, and/or assets; Watkins exclusively manages the day-to-day operations of the Defendant companies, which are not profitable; and Defendants have intermingled or disbursed his $1 million investment amongst themselves and eventually to Watkins, in order to convert funds and/or to ensure that Plaintiff's investment cannot be traced [Docket Entries 71-1, 71-2].

Even taking these allegations as true, as the Court must do on this motion, they are still insufficient to support Plaintiff's reverse alter ego theory of jurisdiction. It is well-established in the case law that common ownership or control over multiple corporate entities, without more, does not establish an alter ego relationship. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Furthermore, Defendants' failure to file taxes for some corporate entities in some years, and the lack of revenue for some of the Defendant companies, do not automatically indicate a failure to adhere to corporate formalities. Plaintiff does not allege, for example, that the Defendant companies have failed to maintain their own financial records. Plaintiff also emphasizes that, allegedly, the P.C. is the only bank account for all Defendant entities. Any failure to treat the funds of individual investors distinctly does not necessarily establish one of the factors in the alter ego analysis, and even if comingling of funds is present, this is simply not enough to establish an alter ego relationship.

Finally, Defendants assert that Plaintiff has not attempted to demonstrate that the privilege of incorporation has somehow been abused, because the P.C. has been used to

perpetrate a fraud or injustice. The alter ego concept is a "tool of equity [that] is appropriately utilized 'when the court must prevent fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from public liability for a crime.'" *Carpenters Health & Welfare Fund of Phila. v. Ambrose*, 727 F.2d 279, 284 (quoting *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (internal quotation omitted)). "[T]he hallmarks of [the] abuse" that is the focus of this inquiry are "typically the engagement of the subsidiary in no independent business of its own but exclusively the performance of a service for the parent and, even more importantly, the undercapitalization of the subsidiary rendering it judgment-proof." *OTR Assocs. v. IBC Servs.*, 353 N.J. Super. 48, 52 (N.J. Super. Ct. App. Div. 2002). Plaintiff does not allege the undercapitalization of the P.C., and Plaintiff has not shown by the required clear and convincing evidence standard that the P.C. has engaged only in the service of Watkins. *See Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994).

Plaintiff has not adequately met its burden to show that this Court may exercise jurisdiction over the P.C., whether based on the P.C.'s actions as a single entity, or through an alter ego theory of liability. Plaintiff therefore has not satisfied the standard governing motions for reconsideration. Plaintiff does not allege any change in controlling legal authority, nor does it argue that any previously unavailable evidence has come to light. As discussed above, the instant motion fails to present a basis for reconsideration, since there is no need to correct a clear error of law or fact. The standard of review for a motion for reconsideration is high, and relief is granted very sparingly. *See NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Plaintiff has not satisfied the Court that it is entitled to such extraordinary relief.

Therefore,

**IT IS** on this 19th day of July, 2016,

**ORDERED** that Plaintiff's motion for reconsideration [Docket Entry No. 93] be and hereby is **DENIED**.

s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 19, 2016